## A04A0027. HOBDAY v. GALARDI.

(598 SE2d 350)

PHIPPS, Judge.

David Hobday was injured when an unidentified object struck his eye at a shooting range on Jack Galardi's ranch. Hobday sued Galardi, alleging that he had negligently failed to maintain his property in a safe condition.[1] The trial court awarded summary judgment to Galardi on the ground that Hobday had failed to show that his injuries were actually or proximately caused by Galardi's alleged negligence. We agree and affirm.

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[2]

So viewed, the record showed that Hobday attended a large Fourth of July party at Galardi's ranch that featured a variety of amusements, including an outdoor gun range. Guests were allowed to fire their own weapons at metal targets covered with cardboard silhouettes. Hobday walked over to the range with his son and a friend. They stood on a concrete pad approximately 25 feet behind the shooters and watched people fire their weapons. The targets were approximately 45 to 50 yards in front of the shooters.

After about 45 minutes, a man whom Hobday did not know began firing rapid shots from a rifle at one of the targets. Hobday "started feeling stuff at [his] feet." Although he did not see the "stuff," he testified that it must have been "bullet shrapnel." Hobday saw his son

---

[1] Hobday also sued Galardi South Enterprises, Inc., but the trial court later entered a consent order dismissing that party.

[2] *Pennington v. WJL, LLC*, 263 Ga. App. 758 (589 SE2d 259) (2003).

"flinch[ ]" and assumed that he also felt "some things" at his feet, but his son never said that he felt or saw anything.

Three to four seconds later, Hobday saw a "quick shadow" and felt something rake across his eye. He thought it was "a piece of metal." When asked in his deposition about the basis for that belief, he testified: "I just know it by the damage it did. It can't be a bug. It can be nothing like that. I mean, it was a piece of shrapnel." He admitted, however, that "there's no way for me to say what color, what size, what it was, no." Hobday testified that he did not see the object after it struck him and that he did not know what had happened to it. Hobday never determined the identity of the man who had shot the rifle, nor did he know what type of rifle the man had used or the caliber of bullet involved. In addition, Hobday was not aware of anyone else being hit with any debris.

Hobday was later treated for a corneal abrasion and has suffered vision loss and light sensitivity. He believes that his injuries resulted from a piece of a bullet ricocheting off a target and hitting his eye.

Hobday's expert witness on gun safety and shooting ranges, Franklin Reeves, visited Galardi's range approximately 15 months after the incident. Reeves acknowledged that changes had been made at the range after Hobday's injury, but before his visit. Reeves opined that the metal targets were "improper" because they did not avoid the "back splatter and . . . ricochet" of bullets. He also testified that the shooters had been improperly permitted to engage in "cross lane shooting," that spectators should have been required to wear safety glasses, and that improper ammunition had been used.

Reeves testified, however, that he "[could] not begin to form an opinion of what struck" Hobday's eye. Moreover, he could not say whether any particular target at the range would have caused a bullet to ricochet where Hobday had stood when he was injured. Reeves also admitted that he was not a ballistics expert and that he did not know what kind of bullet was used by the unidentified shooter to whom Hobday attributed his injuries, or whether the angle of the shots allegedly fired by that shooter would have caused any ricocheting. In short, Reeves could not say that ricochet had occurred in this case, or even that it *probably* had occurred.

Finally, Reeves testified that no range is completely safe and that the risk of ricochet and back splatter are always present. Reeves described one incident where a shooter was wounded in the eye despite wearing safety glasses.

Galardi moved for summary judgment, arguing that Hobday had failed to prove that his injuries resulted from any negligence on the part of Galardi. The trial court granted the motion, ruling that Hobday had not shown causation.

Causation is an essential element in any negligence action.[3] When the defendant seeks summary judgment on the ground that there is no proof of causation, the plaintiff bears the burden of introducing evidence

> which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.[4]

We have repeatedly affirmed awards of summary judgment to defendants when the plaintiffs were unable to identify the causes of their injuries. In *Moore v. Teague*,[5] for example, the plaintiff was invited to a demonstration of home products at the defendant's house. "Everyone at the party, including the plaintiff, was aware that the icemaker malfunctioned twice during the party, spilling ice onto the floor."[6] The plaintiff fell in the kitchen. She "assumed that it was from the wet floor, but she did not actually know if the floor was wet."[7] We held that the defendant was entitled to summary judgment because the cause of the fall was "mere speculation, guess, or conjecture."[8]

In *Shadburn v. Whitlow*,[9] a woman fell at the top of stairs leading into a hotel restaurant. Although the woman's lunch companions testified that they believed she had tripped on loose carpeting they had noticed at the top of the stairwell, they admitted that they were not actually certain what had caused the fall. Accordingly, we affirmed summary judgment in favor of the hotel.[10]

In *Pennington v. WJL*,[11] the plaintiff fell and injured his hand while trying to open a door inside a darkened warehouse. Although the plaintiff did not recall his feet striking anything, the evidence showed that a pile of hoses lay near the door. Accordingly, the plaintiff thought "that common sense and logic dictate[d] that the hoses

---

[3] *Head v. Sears Roebuck & Co.*, 233 Ga. App. 344, 345 (503 SE2d 354) (1998).

[4] (Citations omitted.) *Shadburn v. Whitlow*, 243 Ga. App. 555, 556-557 (533 SE2d 765) (2000).

[5] 255 Ga. App. 220 (564 SE2d 817) (2002).

[6] Id. at 221.

[7] Id. at 220-221.

[8] Id. at 222.

[9] Supra.

[10] 243 Ga. App. at 556-557.

[11] Supra.

caused him to fall."[12] We held that the trial court had properly granted summary judgment to the defendant warehouse because the plaintiff's theory of causation was based on mere speculation.

Following the reasoning in *Moore, Shadburn, Pennington*, and similar cases,[13] we conclude that Hobday has failed to submit sufficient evidence of causation to withstand summary judgment. Hobday admitted that he did not see the object before or after it struck him and that he could not describe its size, shape, or material. Although he presented expert testimony that bullet ricochet is possible when metal targets are used, his expert admitted that he did not know what had hit Hobday's eye or whether ricochet actually had occurred in this case. Hobday points to his medical records as evidence that a bullet particle hit his eye, but those records merely recount what Hobday told his doctors; they do not contain any independent conclusion about the nature of the object. Thus, Hobday's belief that he was struck by a bullet fragment remains just that — a belief.

Although Hobday is entitled to all reasonable conclusions and inferences from the evidence, his theory that he was struck by bullet ricochet due to Galardi's negligence rests on pure conjecture. Hobday cannot defeat summary judgment by relying on uncertain and speculative possibilities and inferences.[14]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED MARCH 22, 2004 —
RECONSIDERATION DENIED APRIL 6, 2004 — 

*Jeffrey H. Dover*, for appellant.
*Hawkins & Parnell, William H. Major III, Nathan T. Lee*, for appellee.

---

[12] 263 Ga. App. at 759.

[13] See, e.g., *Christopher v. Donna's Country Store*, 236 Ga. App. 219 (511 SE2d 579) (1999) (proprietor was entitled to summary judgment where patron alleged that she slipped and fell on a greasy substance in parking lot, but she never saw such a substance on the ground); *Post Properties v. Doe*, 230 Ga. App. 34 (495 SE2d 573) (1997) (physical precedent only) (tenant who was raped in gated apartment complex sued landlord for negligently failing to keep premises safe; landlord won summary judgment because tenant could not show how rapist gained entry); *Nelson v. Polk County Historical Society*, 216 Ga. App. 756 (456 SE2d 93) (1995) (plaintiff who fell from ladder could not prove that property owner's negligence caused his injuries because there was no evidence of how he fell).

[14] See *Moore*, supra at 222-223; *Shadburn*, supra at 557.