**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**August 20, 2020**

# In the Court of Appeals of Georgia

A20A1261. STERN et al. v. PETTIS et al.

MERCIER, Judge.

Holli and Craig Stern sued David Pettis, individually and d/b/a Chick-Fil-A of Tifton FSU, for negligence after their minor son, Knox, was injured on a playground at a Chick-Fil-A franchise in Tifton ("the Tifton CFA").[1] Following discovery, Pettis moved to exclude causation testimony from the Sterns' expert and also sought summary judgment. The Sterns filed a competing motion for spoliation sanctions. In three separate orders, the trial court (1) excluded the expert's causation testimony, (2) denied the Sterns' motion for spoliation sanctions, and (3) granted summary judgment to Pettis. The Sterns appeal each ruling. Finding no error, we affirm.

---

[1] The Sterns originally named several other parties as defendants, but those parties were dismissed from the suit.

Viewed favorably to the Sterns, as the parties opposing summary judgment, see *Hobday v. Galardi*, 266 Ga. App. 780 (598 SE2d 350) (2004), the evidence shows that on May 23, 2015, Holli Stern drove through Georgia on her way to Florida with her father, Darrell Hess, and her two sons, four-year-old Jagger and 19-month-old Knox. After traveling for several hours, they stopped for lunch at the Tifton CFA. All of the tables were occupied, so Stern and Hess took the boys to the restaurant's outdoor playground while they waited for a table to become available. Stern walked back inside the restaurant to order food, leaving Hess with the children at the playground.

The children removed their shoes, as instructed by a sign at the playground, and because it was a sunny, 80 to 90-degree day, Hess checked the playground flooring to make sure it was not too hot. Concluding that the floor was "pretty warm, but no big deal," he allowed the boys to play barefoot. Knox walked over to a slide and climbed up it on his hands and knees. Hess saw a table open up in the play area and secured it for the family. As he was cleaning the table, he heard Knox screaming and found him standing near the bottom of the slide. Hess picked Knox up, placed him on the table, and discovered that the bottoms of his feet were badly burned. The

family took Knox to the emergency room in Tifton, then to a hospital in Florida, where he was treated for the burns.

The Sterns sued David Pettis, owner and operator of the Tifton CFA, alleging that Knox was injured by a hazardous condition on the restaurant's playground. Although the Sterns initially did not identify this hazardous condition, they subsequently offered expert testimony from Brent Beall, a professor with a Ph.D. in biochemistry. Beall testified that exposure to Kay-5 sanitizer, a chemical cleaner used on the Tifton CFA playground equipment, "will cause the type of burns suffered by Knox[.]" He further testified that the sanitizer was used inappropriately, should not have been utilized on a playground, and "caused the burns." The trial court, however, excluded Beall's causation testimony, finding it to be speculative, unreliable, and not helpful to the jury. The court also denied the Sterns' request for spoliation sanctions, then granted summary judgment to Pettis. This appeal followed.

1. The Sterns first argue that the trial court erred in excluding Beall's testimony. The admissibility of expert testimony is governed by OCGA § 24-7-702, which is based on Rule 702 of the Federal Rules of Evidence and "requires that the trial court act as gatekeeper to ensure the relevance and reliability of [such] testimony." *Cleveland v. Sentinel Ins. Co.*, 354 Ga. App. 795, 797 (1) (a) (840 SE2d

3

738) (2020) (citation and punctuation omitted); see also *Smith v. CSX Transp.*, 343 Ga. App. 508, 511 (1) (a) n.5 (806 SE2d 890) (2017). Pursuant to OCGA § 24-7-702 (b),

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) [t]he testimony is based upon sufficient facts or data; (2) [t]he testimony is the product of reliable principles and methods; and (3) [t]he witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

The burden of establishing the admissibility of an expert opinion lies with the party seeking to introduce the expert testimony. See *Cleveland*, supra. In assessing the testimony, a trial court must consider the expert's qualifications, the reliability of the expert testimony, and the relevance of that testimony. See id. The trial court exercises broad discretion in making this evidentiary determination, and we will not reverse the trial court's ruling absent an abuse of that discretion. See id.

The trial court found Beall – a doctor of biochemistry, but not a medical doctor – qualified to offer expert testimony on the chemical makeup of Kay-5 sanitizer. But

4

it deemed his testimony regarding a causal link between the sanitizer and Knox's burns speculative, unreliable, and not helpful to the jury. The record supports these conclusions.

Without dispute, Chick-Fil-A's corporate policies in May 2015 recommended use of Kay-5 sanitizer for cleaning restaurant surfaces. The Tifton CFA purchased Kay-5 in a powder form, which a team leader mixed into a 2.5 gallon jug of water. Once diluted, the sanitizer was placed into a spray bottle so that it could be sprayed on surfaces and wiped with a towel. Each morning, a Tifton CFA employee cleaned the playground with Kay-5 sanitizer, wiping down the pads on the playground's poles and spot-cleaning other parts of the equipment that appeared dirty. Kay-5 was not used on the playground flooring.

According to Beall, the active chemical ingredients in the sanitizer were "noxious" and should not have been used on the playground. He further testified that Knox could have been burned by Kay-5 chemicals that (1) built up on the playground equipment over time; (2) were not sufficiently diluted with water when the sanitizer available on May 23, 2015, was prepared; or (3) were properly diluted, but harmful to the tender feet of a young child. Each of these potential burn mechanisms depended upon the chemicals contacting Knox's feet. As noted above, however, the restaurant

5

did not use Kay-5 on the playground floor where Knox was standing when Hess heard him scream. And when asked for evidence that Knox touched any equipment that had been cleaned with Kay-5 sanitizer, Beall responded: "I am a dad. You have got kids that are trying to get up to the slide. You can pull on a pad, step on it, and then push, jump over to the slide. Do I know that he did that? No, I don't know." When further questioned how the bottom of Knox's feet – but no other part of his body – could have been burned while crawling up the slide on his hands and knees, Beall stated:

> [I]s there a spot of Kay-5 liquid on the slide that he is able to get through without touching his knees and everything and then stands up in the middle of Kay-5? I don't know . . . [I]t is all speculative, in terms of . . . how he got up there and everything like that. There [are] just too many variables.

Despite his inability to identify a contact point, Beall testified that exposure to the Kay-5 chemicals was the "only way" Knox's feet could have been burned so severely and quickly on the playground. But Beall did not test his theories or examine any samples of Kay-5. He did not know when Kay-5 was last used on the playground or whether Chick-Fil-A employees had wiped any chemical residue from the playground equipment with a towel after cleaning. And although he did not "think it

6

was possible" to get burns "as fast . . . and as severe" from standing on hot ground, Beall had no training on how long and at what temperature skin (in particular, the tender skin of a 19-month-old) burns when exposed to heat. Other than first aid instruction relating to lab safety, he had no formal training or education in burn treatment, and he never reviewed Knox's medical records.

Given Beall's failure to conduct any tests, his lack of knowledge regarding thermal burns, and his failure to review Knox's medical records, the trial court was authorized to reject as speculative Beall's claim that nothing else could have caused the burns. See *Thomas v. Publix Super Markets*, 2011 U. S. Dist. LEXIS 164169, at *9 (N.D. Ga. 2011) (rejecting expert's assertion that his untested theory regarding causation offered "the best explanation" for the plaintiff's injuries), *aff'd*, 460 Fed. Appx. 859 (11th Cir. 2012); *Burdette v. Vigindustries*, 2014 U. S. Dist. LEXIS 34727, at *17 (D. Kan. 2014) (reliability of expert's claim that "there's no other cause" for damage was undermined by his admission that other potential causes existed). At best, therefore, Beall's causation opinions were grounded in the *assumption* that the bottoms of Knox's feet were exposed to Kay-5, even though the record contains no evidence of exposure to that chemical. Under these circumstances, the trial court properly exercised its discretion in excluding Beall's causation testimony as

7

speculative, unreliable, and unhelpful to the jury. See generally *Cleveland*, supra (trial court fulfilled its gate-keeping role by excluding expert's causation testimony where expert could not reliably establish a causal link between exposure to a substance and a medical condition); *Smith*, supra at 512 (1) (b) ("Importantly, any step that renders the analysis unreliable renders the expert's testimony inadmissible.") (citation and punctuation omitted).

2. The Sterns argue that the trial court erred in denying their motion for spoliation sanctions. The term "spoliation" refers to "the destruction or failure to preserve evidence that is relevant to contemplated or pending litigation." *Phillips v. Harmon*, 297 Ga. 386, 393 (II) (774 SE2d 596) (2015) (citations and punctuation omitted). A party that engages in spoliation may be subject to sanctions, including a rebuttable presumption that the lost evidence would have been harmful to the spoliator. See id.; *Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 339 (2) (812 SE2d 256) (2018); OCGA § 24-14-22. Spoliation sanctions, however, are only appropriate if the party that lost or destroyed evidence was "under a duty to preserve the evidence at issue." *Phillips*, supra at 394. With respect to a defendant, this duty generally arises "when [the defendant] knows or reasonably should know that the injured party, the plaintiff, is in fact contemplating litigation[.]" Id. at 396.

8

In their spoliation motion, the Sterns claimed that Pettis failed to preserve physical evidence of the Kay-5 sanitizer used on the playground on May 23, 2015. According to the Sterns, this failure prejudiced them because they have been unable to examine the sanitizer solution, test the concentration of the chemicals, or determine whether it was properly prepared. The trial court rejected this spoliation claim. We find no error.

On appeal, the Sterns argue that Pettis knew or should have known that they were contemplating litigation by May 26, 2015, when their attorney asked Tifton CFA management to preserve any video and/or photographic evidence and to refrain from making structural changes to the playground. In their view, Pettis "failed to preserve any evidence of Kay-5," despite knowing shortly after the incident that litigation was anticipated. The relevant facts, however, must be viewed favorably to Pettis, as the party opposing the spoliation motion. See *Cooper Tire & Rubber Co.*, supra at 344 (3).[2] And the evidence shows that Kay-5 sanitizer was prepared in a 2.5

[2] Where, as here, a party files a pre-trial motion for spoliation sanctions and the trial court considers matters outside of the pleadings, but does not hold an evidentiary hearing, "the motion is properly reviewed under the standard applicable to a motion for summary judgment, and as the party opposing the motion, [the non-movant] is entitled to have the evidence in the record viewed in the light most favorable to [him] and to have all reasonable inferences from the evidence drawn in [his] favor." *Cooper Tire & Rubber Co.*, supra at 344 (3) (citation and punctuation omitted).

9

gallon quantity, which was used to clean the Tifton CFA over a period of "[p]robably two days" until the batch was gone, at which point restaurant employees mixed up a new batch.

By May 26, 2015, therefore, the Kay-5 solution used on May 23, 2015, was gone, depleted through general restaurant cleaning. Similarly, the record contains no evidence that bottles, towels, or other equipment containing the solution were available for preservation on May 26, 2015. In other words, there was no sanitizer to preserve when, according to the Sterns, Pettis first knew or should have known about the litigation. Pettis's failure to retain the Kay-5 sanitizer, therefore, did not constitute spoliation. See *Cooper Tire & Rubber Co.*, supra at 345 (3) (trial court properly rejected spoliation claim where evidence showed that alleged spoliator disposed of evidence before duty to preserve the evidence arose).

3. Finally, the Sterns argue that the trial court erred in granting summary judgment to Pettis. Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. See *Hobday*, supra. "We review a trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." Id.

(a) *Alleged burns from Kay-5 Sanitizer*. In their complaint, the Sterns claim that Pettis failed to exercise reasonable care to keep the Tifton CFA premises safe for invitees, in violation of OCGA § 51-3-1. Their claim focuses primarily on the Kay-5 sanitizer, which, the Sterns argue, presented a hazardous condition on the playground. To recover under this theory, the Sterns must demonstrate a causal link between the allegedly hazardous condition and Knox's injury. As we have explained,

> [c]ausation is an essential element in any negligence action. When the defendant seeks summary judgment on the ground that there is no proof of causation, the plaintiff bears the burden of introducing evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.

*Hobday*, supra at 782.

The record does not raise a question of fact as to causation. Tifton CFA employees cleaned the playground each morning using a spray bottle of Kay-5 sanitizer to wipe down pads on the poles and to spot-clean any visible dirt on the equipment. The Sterns, however, have not pointed to any evidence establishing when

11

this cleaning occurred on May 23, 2015, the process used for the cleaning, or what equipment was actually sprayed with Kay-5. More importantly, there is no evidence that the bottoms of Knox's feet (the only part of his body that sustained burns) contacted anything other than the playground flooring, which was *not* cleaned with Kay-5 sanitizer. Beall's speculative opinions drawing a causal link between the injuries and the sanitizer have been properly excluded. And the Sterns offered no medical evidence or admissible expert testimony regarding the origin of the burns or, in particular, whether the burns were chemical in nature.[3]

Because no evidence connects the burns on Knox's feet to the Kay-5 chemicals, any finding of liability based on the restaurant's use of the sanitizer would be mere conjecture. Accordingly, the trial court did not err in granting summary judgment to Pettis on this negligence theory. See *Richardson v. Mapoles*, 339 Ga.

---

[3] On appeal, the Sterns point to testimony from Holli Stern, who asserted that an unidentified man at the emergency room stated that Knox's injury "look[ed] like a chemical burn." But we do not know who this man was or whether he was a medical professional, and hearsay generally cannot defeat summary judgment. See *Goodhart v. Atlanta Gas Light Co*., 349 Ga. App. 65, 72 (2) (a) (825 SE2d 465) (2019) ("All hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment.") (citation and punctuation omitted). The Sterns also cite to a statement in Knox's medical records that the burn wounds were "from unknown origin" and "thought to be a chemical burn." This statement, however, was part of the "history as reported by the mother," rather than a medical finding.

App. 870, 872 (794 SE2d 669) (2016) ("[A] plaintiff's mere speculation about causation is not enough to prevent summary judgment."); *Hobday*, supra at 783 (claimant "cannot defeat summary judgment by relying on uncertain and speculative possibilities and inferences").

(b) *Alleged burns from hot playground*. Alternatively, the Sterns claim that Knox's burns resulted from "severe thermal heat exposure" caused by Pettis's "negligent maintenance of an unreasonably hot playground." Again, however, they have cited no evidence as to what actually caused Knox's burns. Moreover,

> an owner or occupier of land is not an insurer of the safety of its invitees. Rather, in premises liability cases, proof of an invitee's injury, without more, does not give rise to liability on the part of a proprietor. The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm. Recovery is allowed only when the proprietor had knowledge and the invitee did not.

*McAfee v. ETS Payphones*, 283 Ga. App. 756, 757-758 (642 SE2d 422) (2007) (citations and punctuation omitted).

Although the Sterns suggest that Knox could not have been burned on the playground absent negligence by Pettis, "the occurrence of [an] injury, without more, does not itself show the existence of a hazardous condition or instrumentality."

13

*Aubain-Gray v. Hobby Lobby Stores*, 323 Ga. App. 672, 674 (1) (747 SE2d 684) (2013). To the extent the playground flooring or equipment was hot, the record contains no evidence that Pettis had superior knowledge of that condition. No one had previously reported a burn on the playground. Routine inspections had revealed no safety issues in the play area, and Pettis had not received any manufacturer safety recalls regarding the playground equipment or flooring. Moreover, the incident occurred outside on a sunny, 80 to 90-degree day, heat conditions that caused Knox's grandfather to consider the warmth of the flooring before allowing Knox to play without shoes. Under these circumstances, the Sterns had equal knowledge of any hazard relating to a hot environment on the playground, barring their recovery under this theory. See *Petrosky v. Embry Crossing Condo. Assn.*, 284 Ga. App. 354, 358 (1) (b) (643 SE2d 855) (2007) (claimant's equal knowledge of icy conditions in condominium parking lot barred premises liability claim brought after claimant fell on ice).

(c) *Res Ipsa Loquitor*. The Sterns further argue that they are entitled to an inference of negligence pursuant to the doctrine of res ipsa loquitor. Res ipsa loquitor is an evidentiary rule that allows a jury, in the absence of proof that a defendant acted negligently, to "infer facts from the circumstances in which the injury occurred,

thereby filling the evidentiary gap." *Family Thrift v. Birthrong*, 336 Ga. App. 601, 604-605 (2) (785 SE2d 547) (2016). The doctrine – and the inference of negligence – only applies if the plaintiff establishes that: (1) the injury suffered would not ordinarily occur without negligence; (2) the agency or instrumentality that caused the injury lies within the defendant's exclusive control; and (3) the injury did not result from any voluntary action or contribution by the plaintiff. See id. at 605; *Persinger v. Step by Step Infant Dev. Center*, 253 Ga. App. 768, 770 (560 SE2d 333) (2002). No inference arises if "there is an intermediary cause which could have produced the injury." *Aderhold v. Lowe's Homes Centers*, 284 Ga. App. 294, 295 (643 SE2d 811) (2007).

When presented with a res ipsa loquitor argument, a trial court must first determine whether the doctrine applies. See *Matthews v. Yoplait USA*, 352 Ga. App. 591, 595 (835 SE2d 393) (2019). The key issue is not whether the evidence raises a question of fact as to res ipsa loquitor, but whether the claimant has *established* the doctrine's three required elements. See *Persinger*, supra ("Unless the plaintiff can show these elements, he or she is not entitled to present the issue to the jury."). If the trial court finds res ipsa loquitur applicable, "the case may proceed to the jury, and the sufficiency of the circumstantial evidence, and its consistency or inconsistency

15

with alternative hypotheses, is a question for the jury." *Matthews*, supra (citations and punctuation omitted). If the doctrine does not apply, the claimant cannot rely on an inference of negligence. See *Persinger*, supra.

The trial court found res ipsa loquitor inapplicable here after concluding that the Sterns failed to satisfy the doctrinal elements. We agree. As an initial matter, we question whether Pettis had "exclusive control" over the allegedly hazardous instrumentality – the busy playground area occupied by numerous customers who could have come into contact with Knox. See *Family Thrift*, supra (claimant failed to demonstrate that allegedly defective chair in defendant's store was under defendant's exclusive control where chair was accessible to other customers); *Aderhold*, supra at 296-297 (defendant store did not have exclusive control over box that fell from shelf onto plaintiff because other customers had access to box and shelf at issue).

More importantly, the Sterns have not shown that Knox suffered the type of injury "which ordinarily occurs only if someone is negligent." *Family Thrift*, supra at 605 (citation and punctuation omitted). On appeal, they argue that "[a] child should never suffer burns on a playground." But the Sterns offered no medical evidence regarding the type of burns Knox sustained (thermal or chemical), the cause of the burns, or how the tender feet of an 18-month-old might react to a particular burn

16

mechanism. Such evidence might have produced a different result. But these matters are outside the knowledge of a lay person. And nothing precludes the possibility that Knox was burned simply by playing barefoot on an outdoor surface at lunchtime on a sunny, 80 to 90-degree day.

We recognize that, in the grandfather's opinion, the playground flooring was "pretty warm, but no big deal," and no prior customer had complained about burns in the area. Given the dearth of medical evidence regarding the burns and their origin, however, such testimony does not establish that this type of injury ordinarily would only result from negligence. Compare *Persinger*, supra at 771-772 (res ispsa loquitor applied where evidence supported doctor's conclusion that the type of injury plaintiff suffered would not ordinarily occur absent negligence). It also does not remove the very real possibility that Knox accidentally burned his feet on a hot surface.

"[T]he doctrine of res ipsa loquitur should always be applied with caution and only in extreme cases." *Family Thrift*, supra (citations and punctuation omitted). Undoubtedly, Knox suffered a severe injury on the playground. But "[t]he mere fact that [he] sustained an injury does not establish negligence and therefore does not justify a trial." *Persinger*, supra at 770. To infer negligence based on res ipsa loquitor, the Sterns were required to satisfy each of the three doctrinal elements. They failed

to do so. The trial court, therefore, properly rejected the Sterns' res ipsa loquitor arguments.

(d) Because Pettis was entitled to summary judgment on the Sterns' substantive negligence claim, their derivative claim for punitive damages also fails. See *Boeing Co. v. Blane Intl. Group*, 276 Ga. App. 672, 676 (2) (624 SE2d 227) (2005) ("[A] derivative claim cannot survive the absence of compensatory damages on the underlying claim.").

*Judgment affirmed. Miller, P. J., and Coomer, J., concur.*