**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 8, 2016**

# In the Court of Appeals of Georgia

A15A2150. FAMILY THRIFT, INC. et al. v. BIRTHRONG.

DILLARD, Judge.

In this premises-liability action, Cheryl Birthrong sued Family Thrift, Inc. and Olympia Management, Inc. ("defendants"), owners and operators of a chain of thrift stores, alleging that the defendants negligently breached a duty they owed to her as an invitee when she suffered injuries near the store's dressing room as a result of a chair collapsing as she sat upon it. Following a trial and jury verdict in Birthrong's favor, the defendants filed a motion for judgment notwithstanding the verdict (j.n.o.v.), which the trial court denied. The defendants now appeal, arguing that the trial court erred in denying their motion for j.n.o.v. because (1) there was no evidence

that the defendants had superior knowledge of the chair's alleged defect; (2) the doctrine of *res ipsa loquitur* was not applicable; and (3) there was no evidence that Olympia owned or occupied the property. For the reasons set forth *infra*, we reverse.

On appeal from the denial of a motion for a directed verdict or a motion for j.n.o.v., we construe the evidence "in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict."[1] And because jurors are the sole and exclusive judges of the weight and credit given the evidence, we must construe the evidence with "every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict."[2] Nevertheless, we review questions of law *de novo*.[3]

So construed, the evidence shows that Family Thrift owns a small chain of thrift stores, selling donated clothes, housewares, and some furniture, and it operates these stores under the name Park Avenue Thrift. Olympia Management, a separate

---

[1] *Atlanta Emergency Servs., LLC v. Clark*, 328 Ga. App. 9, 11 (1) (761 SE2d 437) (2014) (punctuation omitted).

[2] *Id.* (punctuation omitted).

[3] *See id.*

corporation with common ownership, is responsible for establishing the operating policies and procedures for all of Family Thrift's stores, including policies pertaining to safety and inspection of merchandise for sale, and it is also responsible for ensuring that such policies and procedures are implemented. And toward that end, Olympia managers conduct weekly meetings with Family Thrift personnel at each of the stores' locations.

On February 4, 2011, Birthrong and a friend went to the Park Avenue Thrift in Lawrenceville to shop for clothes. After browsing for a bit, Birthrong's friend wanted to try on some clothes, so Birthrong accompanied her to the dressing-room area of the store, which was located near the front of the store not far from the cash registers. As her friend entered the dressing room, Birthrong noticed two chairs just outside the dressing room, one of which was occupied by a male customer. As a result, Birthrong assumed the chairs were for waiting customers' use and, therefore, decided that she would sit while her friend tried on clothes. But just as Birthrong sat down on the unoccupied chair, its seat collapsed underneath her, and she fell to the floor, injuring her left shoulder.

Immediately, one of the store's cashiers approached and asked Birthrong if she was hurt. Believing at the time that she was only bruised, Birthrong responded that

she was not injured, at which point the cashier picked up pieces of the broken chair and told Birthrong that she was going to find the store's manager. A few moments later, the cashier returned, informed Birthrong that the manager was not there, and asked for contact information, which Birthrong provided.

Over the course of the following week, the pain in Birthrong's shoulder increased, and no one from the store contacted her. Thus, Birthrong returned to the store in an attempt to speak with the manager. She was unable to do so; but before leaving the store, she noticed a chair that looked similar to the one that had collapsed and decided to take a photograph of it.

Thereafter, Birthrong filed a lawsuit against Family Thrift and Olympia to recover damages for the injuries that she suffered as a result of the chair collapsing underneath her while shopping at the defendants' store. The defendants filed an answer, and discovery then ensued. Ultimately, the case proceeded to trial, during which Birthrong, the cashier who assisted her after she fell, and two of Olympia's general managers testified. At the close of evidence, the defendants moved for a directed verdict, arguing that they lacked superior knowledge of the hazard posed by the chair and that, in any event, Olympia did not own or occupy the premises and, thus, could not be held liable. But the trial court denied the defendants' motions, and

4

at the conclusion of the trial, the jury found in favor of Birthrong, with both defendants being held liable for damages.

Subsequently, the defendants filed a motion for j.n.o.v., reiterating the same arguments that they made in their motions for directed verdict. Birthrong filed a response, and, once again, the trial court denied the defendants' motion and issued an order affirming the jury's verdict. This appeal follows.

1. In their first enumeration of error, the defendants contend that the trial court erred in denying their motion for j.n.o.v., arguing that there was no evidence that they possessed superior knowledge of the hazard posed by the allegedly defective chair. We agree.

It is, of course, well established that under Georgia law a proprietor has a statutory duty to exercise ordinary care to keep its premises safe,[4] which "includes inspecting the premises to discover possible dangerous conditions of which the [proprietor] does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the

---

[4] *See* OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.").

premises."[5] But in order for a plaintiff to recover damages for injuries sustained in a premises-liability action, an invitee must prove "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."[6] Indeed, it is fundamental that, in a premises-liability case, the true ground of liability is "the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property."[7] Thus, it is when the "perilous instrumentality" is "known to the owner and not known to the person injured that a recovery is permitted."[8]

---

[5] *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997) (citations omitted); *accord Benefield v. Tominich*, 308 Ga. App. 605, 608 (1) (708 SE2d 563) (2011).

[6] *Robinson*, 268 Ga. at 748-49 (2) (b); *accord Gaskin v. Berry's Boat Dock*, 334 Ga. App. 642, 644 (780 SE2d 83) (2015); *Avery v. Cleveland Ave. Motel*, 239 Ga. App. 644, 645 (2) (521 SE2d 668) (1999).

[7] *Freeman v. Eichholz*, 308 Ga. App. 18, 22 (2) (705 SE2d 919) (2011) (punctuation omitted); *accord Ballard v. S. Reg'l Med. Ctr., Inc.*, 216 Ga. App. 96, 97 (1) (453 SE2d 123) (1995).

[8] *Freeman*, 308 Ga. App. at 22-23 (2) (punctuation omitted); *Ballard*, 216 Ga. App. at 97 (1).

In this matter, there was no evidence presented during trial that any employee of Family Thrift or Olympia had actual knowledge of the hazard posed by the chair. As a result, this case necessarily turns on "whether constructive knowledge of the alleged hazard can be imputed to the store,"[9] which may be shown by demonstrating that

> (1) an employee of the defendant was in the immediate vicinity of the fall and had an opportunity to correct the hazardous condition prior to the fall, or (2) the hazardous condition had existed for a sufficient length of time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises.[10]

Here, Birthrong argues that the defendants had constructive knowledge that the chair was defective because, if they had followed their inspection procedures, which entailed inspecting every donated item before placing it in the main store area for sale, they would have discovered the defect. But Birthrong presented no evidence during trial "establishing exactly how the chair was defective, whether the defect was

---

[9] *Benefield*, 308 Ga. App. at 608 (1) (punctuation omitted); *accord Blocker v. Wal–Mart Stores*, 287 Ga. App. 588, 589-90 (651 SE2d 845) (2007); *Washington v. J.D. Royer Wholesale Florist*, 275 Ga. App. 407, 408 (620 SE2d 626) (2005).

[10] *Benefield*, 308 Ga. App. at 608 (1) (punctuation omitted); *accord Gibson v. Halpern Enterprises,* 288 Ga. App. 790, 791 (655 SE2d 624) (2007); *Bolton v. Wal-Mart Stores,* 257 Ga. App. 198, 198 (570 SE2d 643 (2002).

one which would be visible during an inspection, or how long the defect existed."[11] There is, then, "no logical foundation for arguing that such a defect should have been discovered during the . . . inspection procedure."[12] And as we have previously held, "there is no duty to discover a defect which is not manifested until the incident causing injury."[13] Thus, given that Birthrong failed to produce evidence from which a jury could properly infer that defendants had superior knowledge that the chair was defective, the trial court erred in denying their motion for j.n.o.v. as to this issue.[14]

2. Nevertheless, at trial, Birthrong apparently overcame this lack of specific evidence of any defect in the chair by arguing that the doctrine of *res ipsa loquitur* applied to create an evidentiary presumption that the chair was indeed defective. Consequently, in their second enumeration of error, the defendants contend that the

---

[11] *Freeman*, 308 Ga. App. at 23 (2).

[12] *Id*.

[13] *Ballard*, 216 Ga. App. at 98 (1); *accord Freeman*, 308 Ga. App. at 23 (2).

[14] *See Freeman*, 308 Ga. App. at 23 (2) (holding that summary judgment in defendant's favor was proper because there was no evidence from which it could be inferred that defendant had constructive knowledge that chair, which collapsed when plaintiff sat upon it, was defective).

trial court likewise erred in denying their motion for j.n.o.v. based on its ruling that the doctrine of *res ipsa loquitur* was applicable. Again, we agree.

As all first-year law students learn, "res ipsa loquitur" is a legal maxim that means the transaction or thing speaks for itself.[15] More precisely, it is a rule of evidence to be applied in cases when "there is no evidence of consequence showing negligence on the part of the defendant,"[16] and one which allows "but does not require, the jury to infer facts from the circumstances in which the injury occurred, thereby filling the evidentiary gap."[17] The application of *res ipsa loquitur* is authorized, then, when "(1) the injury is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have

---

[15] *Law v. BioLab, Inc.*, 325 Ga. App. 500, 502 (2) (753 SE2d 446) (2013); *accord Evans v. Heard*, 264 Ga. 239, 240 (442 SE2d 753) (1994); *Atlanta Ry. & Power Co. v. Johnson*, 120 Ga. 908 (48 SE2d 389, 391) (1904); *Dawson v. Am. Heritage Life Ins. Co.*, 121 Ga. App. 266, 269 (173 SE2d 424) (1970).

[16] *Aderhold v. Lowe's Home Centers, Inc.*, 284 Ga. App. 294, 295 (643 SE2d 811) (2007) (punctuation omitted); *accord Kmart Corp. v. Larsen*, 240 Ga. App. 351, 352 (522 SE2d 763) (1999).

[17] *Aderhold*, 284 Ga. App. at 295 (punctuation omitted); *accord Larsen*, 240 Ga. App. at 352.

9

been due to any voluntary action or contribution on the part of the plaintiff."[18] But as we have previously emphasized, the doctrine of *res ipsa loquitur* should always be "applied with caution and only in extreme cases."[19]

Here, *res ipsa loquitur* was not applicable because Birthrong failed to show that this is "the type of accident which ordinarily occurs only if someone is negligent."[20] Certainly, through normal wear and tear, a chair—especially a used chair donated to a thrift store—can cease fulfilling its intended function and create a hazardous condition without negligence on the part of any individual.[21] Furthermore,

---

[18] *Aderhold*, 284 Ga. App. at 295 (punctuation omitted); *accord Larsen*, 240 Ga. App. at 352.

[19] *Law*, 325 Ga. App. at 502 (2) (punctuation omitted); *accord Hosp. Auth. of City of St. Mary's v. Eason*, 222 Ga. 536, 541 (1) (150 SE2d 812) (1966); *see generally Sinkovitz v. Peters Land Co.*, 5 Ga. App. 788 (64 SE 93, 95) (1909) ("The maxim, 'Res ipsa loquitur,' is of limited application, but embodies a perfectly sound legal principle.").

[20] *Ballard*, 216 Ga. App. at 99 (2).

[21] *See Watts & Colwell Builders, Inc. v. Martin*, 313 Ga. App. 1, 6 (2) (720 SE2d 329) (2011) (holding that *res ipsa loquitur* was not applicable to find defendant liable for injury caused when the door to a bathroom stall fell off its hinges and knocked plaintiff to the ground because the failure of a hinge could have occurred in the absence of negligence); *Ballard*, 216 Ga. App. at 99-100 (2) (holding that *res ipsa loquitur* was not applicable to find defendant liable for injury caused when handrail pulled out from the wall because it could become defective and created a dangerous condition without someone's negligence, and thus accident was not of the type that

10

Birthrong similarly failed to show that the defendants had exclusive control of the chair. As one of the defendants' managers testified, although store policy required furniture to remain in the furniture section of the store, it was not uncommon for customers to move chairs around the store for their own use. Indeed, Birthrong testified that she sat in the chair at issue after observing another customer near the dressing room sitting in a similar chair. Thus, the uncontroverted evidence showed that the chair was accessible to other customers and not within the defendants' exclusive control. Given these particular circumstances, Birthrong also failed to satisfy the second element of *res ipsa loquitur*, and the trial court erred in denying the defendants' motion for j.n.o.v. as to this issue as well.[22]

ordinarily occurs only because of someone's negligence).

[22] *See Watts & Colwell Builders, Inc.*, 313 Ga. App. at 6 (2) (holding that *res ipsa loquitur* was not applicable to find defendant liable for injury caused when the door to a bathroom stall fell of its hinges and knocked plaintiff to the ground because stall door was not within defendant's exclusive control); *Aderhold*, 284 Ga. App. at 295-96 (holding that defendant store did not retain exclusive control over the box on a shelf that fell and injured plaintiff, as required for application of *res ipsa loquitur*, because the uncontroverted evidence reflected that the box was within the reach of other customers); *Sams v. Wal-Mart Stores, Inc.*, 228 Ga. App. 314, 316 (491 SE2d 517) (1997) (same). *Cf. Turry v. Hong Kong Delight, Inc.*, 215 Ga. App. 193, 194 (449 SE2d 873) (1994) (holding that *res ipsa loquitur* was applicable when evidence showed that sofa in restaurant's reception area, which collapsed as plaintiff sat upon it, was furnished and controlled by defendant); *Gresham v. Stouffer Corp.*, 144 Ga. App. 553, 554 (241 SE2d 451) (1978) (holding that *res ipsa loquitur* was applicable

3. The defendants also contend that the trial court erred in denying their motion for j.n.o.v., specifically as to Olympia's liability, because there was no evidence that Olympia owned or occupied the premises where Birthrong's injury occurred. But given our holdings in Divisions 1 and 2, *supra*, we need not address this issue.

Thus, for all of the foregoing reasons, the trial court erred in denying the defendants' motion for j.n.o.v. Accordingly, we reverse the jury's verdict and trial court's judgment in favor of Birthrong.

*Judgment reversed. Ellington, P. J., and McFadden, J., concur.*

---

when evidence showed that restaurant's dining chair, which collapsed as plaintiff sat upon it, was furnished and controlled by restaurant for customer use).