IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 24, 2018 Session

## OVALLA JOBE v. GOODWILL INDUSTRIES OF MIDDLE TENNESSEE, INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 14C4626      Kelvin D. Jones, Judge**

_____

### No. M2017-02299-COA-R3-CV

_____

This appeal involves a premises liability suit filed by a customer of a Goodwill store after the customer sat on an item of furniture that was for sale and it collapsed. The trial court granted summary judgment to Goodwill, finding no genuine issue of material fact and concluding that Goodwill did not create or have actual or constructive knowledge of any alleged defect. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Luvell L. Glanton and Shilpini Vora Burris, Nashville, Tennessee, for the appellant, Ovalla Jobe.

Fred C. Statum, III and Jordan Caralisa Connell, Nashville, Tennessee, for the appellee, Goodwill Industries of Middle Tennessee, Inc.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

Ovalla Jobe filed this lawsuit against Goodwill Industries of Middle Tennessee, Inc., seeking to recover for injuries and expenses she allegedly incurred as a result of a fall at a Goodwill store. According to Ms. Jobe's complaint, she was a customer at the store and attempted to sit in a plastic chair that was displayed for sale when the chair collapsed, causing Ms. Jobe to fall and hit her head on another piece of furniture. Ms. Jobe alleged that Goodwill "had constructive notice of the hazardous, dangerous and

unsafe condition of the plastic chair, which caused the Plaintiff to fall." Ms. Jobe also alleged that Goodwill "created a hazardous, dangerous and unsafe condition which created an unreasonable risk of harm and proximately caused the Plaintiff to suffer personal injuries." Specifically, she alleged that Goodwill employees were negligent in failing to safely maintain and inspect the facility and address unsafe conditions and in failing to provide warning signs or notice of unsafe conditions.

Goodwill filed a motion for summary judgment along with the depositions of Ms. Jobe and two Goodwill employees. Specifically, Goodwill cited deposition testimony from its risk manager and its district manager, both of whom testified that donated items are visually inspected and examined by a donation attendant when received and inspected again by a processing employee before merchandise is priced and placed on the sales floor. The district manager added, "We look at it. You know, we're checking the sturdiness. You know, we're maybe moving it around. We're not sitting on it. You know, it's – it's a pretty quick process." Goodwill also cited the following testimony from Ms. Jobe's deposition:

Q. Before you sat down on the chair, as you were looking at the chair before you sat down on it, did you pick up the chair, look at it, inspect it to see if it looked –

A. No.

Q. – safe to sit on?

A. No.

Q. Was there anything that was apparent or obvious to you in looking at it while it was still intact that told you it might not be safe to sit on?

A. No.

Based on this testimony, Goodwill asserted that the material facts were not in dispute and that any alleged defect in the chair, if one existed, did not manifest itself until the accident causing the injury. Thus, Goodwill argued that Ms. Jobe could not establish that it had constructive notice of any alleged defect. Relying on *Parker v. Holiday Hospitality Franchising, Inc.* 446 S.W.3d 341, 350 (Tenn. 2014), Goodwill argued that a business owner does not have a duty or responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated or which the owner neither knew about nor could have discovered with reasonable care.

Ms. Jobe filed a response and argued that genuine issues remained "as to the most central material fact in this case, that being whether or not from the evidence submitted, Goodwill conducted a reasonable inspection of its furniture before it was placed on display." For purposes of summary judgment, Ms. Jobe admitted that Goodwill representatives perform a visual inspection of donated items of furniture before they are placed on the sales floor. However, Ms. Jobe asserted in her memorandum that "a cursory visual inspection would not have revealed hidden or latent defects with the chair." Ms. Jobe argued that Goodwill employees should have gone further and conducted "a simple, hands-on inspection such as a 'flex test'" in which they pushed down on the chair or sat in the chair. Ms. Jobe submitted her own affidavit and that of her son, who was also present at the store on the date of the incident. According to these affidavits, Ms. Jobe saw a plastic table and chair displayed for sale, removed the chair from atop the plastic table "by the back," and sat it on the floor. As she sat down and leaned back, the chair collapsed. The affidavits state that the table and chair were clearly marked as a table and chair set. Ms. Jobe attached photographs of the broken furniture pieces as they appeared after the incident.

After a hearing, the trial court entered an order granting summary judgment to Goodwill. The trial court noted that Ms. Jobe did not identify any specific defect in the chair and that her position was, presumably, that the chair must have been defective simply because it collapsed. The trial court referenced the undisputed testimony that Goodwill representatives perform a visual inspection of furniture items before they are placed on the sales floor, Ms. Jobe's testimony that there was nothing apparent or obvious to her from looking at the chair to indicate that it might not be safe to sit on it, and Ms. Jobe's concession in her memorandum that a visual inspection of the chair would not have revealed hidden or latent defects with the chair. Relying on *Parker*, the trial court concluded that Goodwill met its duty to exercise due care when it conducted general visual inspections of the chair and that it was not required to also test its structural integrity. The trial court concluded that Goodwill was under no duty to discover a defect that had not manifested until the accident. It also found "no genuine issue of material fact that Goodwill did not create any alleged defect and that Goodwill had neither actual nor constructive knowledge of the alleged defect." Ms. Jobe timely filed a notice of appeal.

## II. ISSUE PRESENTED

On appeal, Ms. Jobe contends that the trial court erred in granting summary judgment to Goodwill. For the following reasons, we affirm the trial court's order and remand for further proceedings.

## III. DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a motion for summary judgment is properly supported, in order to survive summary judgment, "the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' . . . showing that there is a genuine issue for trial." *Id.* at 265. "[S]ummary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial." *Id.* (citing Tenn. R. Civ. P. 56.04, 56.06). Appellate courts review the grant or denial of a motion for summary judgment de novo with no presumption of correctness. *Id.* at 250.

As a general rule, negligence cases are not amenable to disposition on summary judgment; however, summary judgment "may be used to conclude any civil case, including negligence cases, that can be and should be resolved on legal issues alone." *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997). Summary judgment is appropriate in a negligence case if the facts, together with the inferences to be drawn from the facts, are so certain and uncontroverted that reasonable minds must agree. *Keene v. Cracker Barrel Old Country Store, Inc.*, 853 S.W.2d 501, 502-03 (Tenn. Ct. App. 1992). Simply put, "if there is no factual dispute, there is no need for trial." *Rye*, 477 S.W.3d at 262.

"Negligence [cannot] be presumed by the mere happening of an injury or accident." *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971). A plaintiff must establish the following elements to prove a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). A plaintiff seeking to prevail against a property owner on a premises liability claim must prove these elements of a negligence claim, *and in addition*, either that "'the condition was caused or created by the owner, operator, or his agent,'" or that "'the owner or operator had actual or constructive notice that the condition existed prior to the

accident.'" *Parker*, 446 S.W.3d at 350 (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)).

"'Liability in premises liability cases stems from superior knowledge of the condition of the premises.'" *Blair*, 130 S.W.3d at 764 (quoting *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980)). The operator of a place of business has a duty to maintain the premises "'in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired.'" *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 629-30 (Tenn. Ct. App. 2009) (quoting *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001)). However, the property owner is not responsible for removing or warning against "conditions from which no unreasonable risk was to be anticipated." *Parker*, 446 S.W.3d at 350.

Here, Ms. Jobe alleged that Goodwill "had constructive notice of the hazardous, dangerous and unsafe condition of the plastic chair" and "created a hazardous, dangerous and unsafe condition" by failing to safely maintain and inspect the facility and address or warn of unsafe conditions. In granting summary judgment for Goodwill, the trial court relied on *Parker v. Holiday Hospitality Franchising, Inc.*, 446 S.W.3d 341, 343 (Tenn. 2014), a premises liability action in which a hotel guest was injured when a handicap accessible shower bench collapsed. For purposes of summary judgment, the parties admitted that the shower bench was negligently installed by an independent contractor. *Id.* at 345. The trial court granted summary judgment to the hotel owner on the premises liability claim. *Id.* at 346. The case eventually made its way to the Tennessee Supreme Court. The court began its analysis of the premises liability claim with these guiding principles:

> "Business proprietors are not insurers of their patrons' safety." *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). Property owners are, however, required to exercise due care under all the circumstances. *Blair*, 130 S.W.3d at 764. This general duty of due care imposes upon a property owner the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence. *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994). A property owner's duty does not include, however, "the responsibility to remove or warn against conditions from which no unreasonable risk was to

5

be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." *Rice v. Sabir*, 979 S.W.2d 305, 308-09 (Tenn. 1998)[.]

*Id.* at 350. The undisputed facts in *Parker* demonstrated that the hotel owner did not have actual knowledge of the defective condition of the shower bench. *Id.* at 351. Therefore, the case turned on whether the undisputed facts established constructive notice. *Id.* at 352. Constructive notice means "'information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *Id.* at 351 (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997)). It can be established "by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it." *Id.* It may also be established "by showing that the dangerous condition resulted from 'a pattern of conduct, a recurring incident, or a general or continuing condition.'" *Id.* (*Blair*, 130 S.W.3d at 765).[1]

Based on the facts before it, the supreme court concluded that the hotel owner did not have constructive notice of the defective shower bench. *Id.* at 352. He had never received any complaints about that particular shower bench or any others in the hotel, and the defect was concealed behind the wall and not visible once construction was completed. *Id.* The plaintiffs argued that the hotel owner "had a duty to inspect the independent contractor's work during construction of the Hotel *and a duty to test the structural integrity of the shower bench* after it was installed." *Id.* (emphasis added). However, the court concluded that "Tennessee law does not impose such duties on property owners." *Id.* The court compared the situation before it to *Smith v. Castner-Knott Dry Goods Co.*, No. 01A01-9512-CV-00554, 1997 WL 203605, at *3 (Tenn. Ct. App. Apr. 25, 1997), where a mirrored tile fell from the wall of a department store and injured a child. The parents filed a premises liability action against the store owner and argued that the owner "owed a duty to its customers 'to inspect and test the structural integrity of the mirrored tiles on a regular basis.'" *Id.* at 353 (quoting *Castner-Knott*, 1997 WL 203605, at *2). Rejecting this argument, the *Castner-Knott* court concluded

---

[1]This second approach "simply recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence" and must take reasonable steps to remedy the commonly occurring dangerous condition. *Blair*, 130 S.W.3d at 766. "The question is whether the condition occurs so often that the premises owner is put on constructive notice of its existence." *Id.* Allowing plaintiffs to prove constructive notice under the second method "relieves plaintiffs of the difficult burden of showing the duration of a particular occurrence" so long as the plaintiffs can show that the dangerous condition was part of a pattern of conduct, a recurring incident, or a general or continuing condition such that its presence was reasonably foreseeable. *Id.*

that general visual inspections of the store by employees and cleaning crews were reasonable and that "'[t]he law will not impose a duty on Castner-Knott to test the structural integrity of mirrored tiles in its stores without some credible evidence of other failures of the same type of mirrored tiles.'" *Id.* (quoting *Castner-Knott*, 1997 WL 203605, at *3). In *Parker*, the court found that the same rationale applied to the facts before it and concluded that "Tennessee law imposed no duty on [the hotel owner] to inspect the work of the independent contractor during construction *or to test the structural integrity of the shower bench* after the Hotel was completed in the absence of any reports of problems with this shower bench or others of the same type." *Id.* at 353 (emphasis added).

In the case before us, the trial court also found guidance in a factually similar Georgia case -- *Family Thrift, Inc. v. Birthrong*, 785 S.E.2d 547 (Ga. Ct. App. 2016), *cert. denied* (Ga. Oct. 3, 2016). In *Birthrong*, the plaintiff was a customer at a thrift store that sold donated clothes, housewares, and furniture. *Id.* at 549. While shopping at the store, she sat on a used chair that was donated to the store and suffered injuries when it collapsed. *Id.* at 550-52. The plaintiff filed a premises liability action against the thrift store, alleging that the store negligently breached a duty owed to her as an invitee of the store. *Id.* at 549. The court of appeals held that the trial court should have granted the thrift store's motion for judgment notwithstanding the verdict because there was no evidence that it possessed superior knowledge of the hazard posed by the chair. *Id.* at 550. Due to the lack of evidence that any employee had actual knowledge of the hazard, the case turned on whether constructive knowledge could be imputed to the store. *Id.* The plaintiff argued that if the thrift store had followed its inspection procedure by inspecting every item donated to the store, it would have discovered the defect. *Id.* at 551. However, the customer presented no evidence to establish exactly how the chair was defective, how long the defect existed, or whether the defect was one that would have been visible during an inspection. *Id.* As such, the court of appeals found "no logical foundation for arguing that such a defect should have been discovered during the . . . inspection procedure." *Id.* The court concluded that the store owner had no duty to discover a defect that had not manifested until the incident causing the injury. *Id.* The plaintiff simply failed to produce evidence from which a jury could properly infer that the thrift store had superior knowledge that the chair was defective.[2] *Id.*

---

[2]Alternatively, the court of appeals found the doctrine of *res ipsa loquitur* inapplicable because the plaintiff "failed to show that this is the type of accident which ordinarily occurs only if someone is negligent." *Id.* at 552 (quotation omitted). "Certainly," the court said, "through normal wear and tear, a chair—especially a used chair donated to a thrift store—can cease fulfilling its intended function and create a hazardous condition without negligence on the part of any individual." *Id.* No argument regarding *res ipsa loquitur* was raised in this case.

In the case at bar, Goodwill moved for summary judgment and submitted the deposition testimony of two managers who testified that donated items are visually inspected and examined first by a donation attendant when received and again by a processing employee before merchandise is priced and placed on the sales floor. The district manager testified that the donation attendant looks for any damage to the item and that the processing employee also visually inspects the item for any damage or any type of flaw. He added, "We look at it. You know, we're checking the sturdiness. You know, we're maybe moving it around. We're not sitting on it. You know, it's – it's a pretty quick process." Goodwill also cited the following testimony from Ms. Jobe's deposition:

Q. Was there anything that was apparent or obvious to you in looking at it while it was still intact that told you it might not be safe to sit on?

A. No.

This evidence tended to disprove Ms. Jobe's assertion that Goodwill "had constructive notice of the hazardous, dangerous and unsafe condition of the plastic chair" or "created a hazardous, dangerous and unsafe condition" by failing to safely maintain and inspect the facility. Therefore, the burden shifted to Ms. Jobe to identify a genuine issue of material fact.

Once the burden shifted to Ms. Jobe, she was required to "do more than simply show that there is some metaphysical doubt as to the material facts." *Rye*, 477 S.W.3d 265. "The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* In response to the motion for summary judgment, Ms. Jobe admitted that Goodwill representatives perform a visual inspection of donated items of furniture before placing them on the sales floor, and she also conceded that "a cursory visual inspection would not have revealed hidden or latent defects with the chair." Similarly, she concedes in her brief on appeal that "a visual inspection would not have revealed that the chair was not sturdy."

Although Ms. Jobe failed to identify any specific defect in the chair, she insisted, without citing to any evidence, that a genuine issue of material fact remained as to "whether a reasonable inspection of the chair which is the subject matter of the lawsuit would have identified a latent or non-latent defect." She argued, in her memorandum of law, that Goodwill employees should have conducted a "hands-on inspection" such as a "flex test" in which they pushed down on the chair or sat in the chair. However, the record contains no evidence regarding the nature of the alleged defect or weakness, the

8

length of time it may have existed, or whether it could have been discovered by a "flex test." We therefore conclude, as did the Georgia court, that plaintiff has "no logical foundation for arguing that such a defect should have been discovered during the . . . inspection procedure." *Birthrong*, 785 S.E.2d at 551. Moreover, Goodwill's district manager *did* testify that "we're checking the sturdiness" during the initial inspections.

"The mere fact that a customer in a store falls from a chair, or that a seat or chair collapses, does not of itself establish negligence where there is no sowing that it was defective[.]" 62A Am. Jur. 2d *Premises Liability* § 528; *see, e.g.*, *Wiltz v. Floor & Decor Outlets of Am.*, 186 So.3d 1204, 1209 (La. Ct. App. 2016) *writ denied* (La. May 27, 2016) (affirming summary judgment for a store where the customer failed to establish why a bench collapsed or what defect allegedly existed, as it could have been caused by improper assembly, improper maintenance, or manufacturer negligence, and mere speculation was insufficient). Ms. Jobe was required to demonstrate that the defective condition of the chair was either "caused or created" by Goodwill or that Goodwill "had actual or constructive notice that the condition existed prior to the accident." *Parker*, 446 S.W.3d at 350. The undisputed facts establish neither. Ms. Jobe did not attempt to demonstrate constructive notice "by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it," nor did she attempt to establish that "the dangerous condition resulted from 'a pattern of conduct, a recurring incident, or a general or continuing condition.'" *See id.* at 351-52 (quoting *Blair*, 130 S.W.3d at 765). "Courts need not submit to the jury negligence cases containing only a spark or glimmer of evidence that requires the finder-of-fact to make a leap of faith to find the defendant liable for the plaintiff's injury." *Psillas*, 66 S.W.3d at 866 (citing *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995); *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 427 (Tenn. Ct. App. 1994)). We affirm the trial court's finding that Ms. Jobe failed to establish a genuine issue of material fact regarding whether Goodwill created or had actual or constructive knowledge of an alleged defect.

On appeal, Ms. Jobe complains that the trial court "focused primarily on the issue of whether Goodwill had a duty to discover a defect which is not manifested until after the incident causing the injury." Ms. Jobe argues on appeal that "[a] dangerous condition was created from the mislabeling of a small side table as a chair." She contends that the furniture item at issue was specifically marked as a table and chair but that "it was later identified by a Goodwill employee that the 'chair' was in fact a side table." In her brief on appeal, Ms. Jobe cites to testimony from her deposition and the deposition of a Goodwill manager. Ms. Jobe also claims that in response to Goodwill's motion for summary judgment, she not only argued that Goodwill should have performed more than a visual inspection, but "also asserted that the 'chair' displayed for sale was, as discussed

above, actually a small table." Ms. Jobe does not provide a citation to the record where she made such an argument, and our review of the record reveals no such "mislabeling" argument was raised in the trial court. Ms. Jobe simply never argued to the trial court that the item she sat on was a mislabeled side table. In response to Goodwill's statement of undisputed material facts, Ms. Jobe admitted the following:

> The Plaintiff alleges that on April 26, 2014, she attempted to sit in a plastic chair that was displayed for sale when the chair collapsed.

She and her son also referred to the item of furniture as a chair in their affidavits. "'It has long been the general rule that questions not raised in the trial court will not be entertained on appeal.'" *Emory v. Memphis City Sch. Bd. of Educ.*, 514 S.W.3d 129, 146 (Tenn. 2017) (quoting *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32-33 (Tenn. 2001)). Even though the testimony that Ms. Jobe now cites on appeal was included within the full-length depositions submitted to the trial court, "it was not the trial court's responsibility to blindly scour the record to identify any genuine issues of material fact that were not identified or argued in [the plaintiff's] response [to the motion for summary judgment]." *Jones v. City of Union City*, No. W2013-02358-COA-R3-CV, 2015 WL 9257815, at *11 n.4 (Tenn. Ct. App. Dec. 17, 2015). "In considering whether the trial court erred in granting summary judgment, we will look to the evidence that the parties presented to the trial court at each stage of the summary judgment proceedings in order to decide whether the parties met their burden of production and whether a genuine issue of fact existed." *Cartwright v. Jackson Capital*, No. W2011-00570-COA-R3-CV, 2012 WL 1997803, at *11 n.9 (Tenn. Ct. App. June 5, 2012); *see also Rye*, 477 S.W.3d at 265 ("The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party."). Because Ms. Jobe did not raise this mislabeling argument in the trial court in response to the motion for summary judgment, we decline to consider it on appeal.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded. Costs of this appeal are taxed to the appellant, Ovalla Jobe, and her surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE