**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 28, 2019**

# In the Court of Appeals of Georgia

A19A1240. MATTHEWS v. YOPLAIT USA, INC.               HO-041

HODGES, Judge.

In this consumer food product liability case, Tangerina Matthews appeals a trial court order granting Yoplait USA, Inc.'s motion for summary judgment. Matthews asserts the trial court erred in granting summary judgment to Yoplait after determining that the doctrine of res ipsa loquitur applies. Because we conclude the trial court misapplied the doctrine, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

Under Georgia law,

[s]ummary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment *as a matter of law*. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable

conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted; emphasis supplied.) *Kamara v. Henson*, 340 Ga. App. 111 (796 SE2d 496) (2017). So viewed, the record reveals that Matthews purchased a small container of strawberry yogurt manufactured and packaged by Yoplait. Matthews alleged the container remained sealed until she opened it while driving her daughter to work. While in her car, Matthews opened the container, stirred it with a plastic spoon, and began eating, thinking the crunching sensation she felt was caused by the strawberries. However, according to Matthews, she realized that, after swallowing, sharp metal fragments were present in the yogurt. Matthews immediately felt throat pain, realized her lips or gums were bleeding, parked her vehicle, and called 911. At the hospital, Matthews underwent an endoscopy, and the doctors gave her husband the metal fragments removed from her gastrointestinal tract. According to Matthews, the doctor removed 17 metal fragments, measuring over 1.5mm in size, from her stomach.

Matthews sued Yoplait for negligence under OCGA § 51-1-23, negligence per se for violation of the Georgia Food Act, OCGA § 26-2-20 et seq., and expenses of litigation. Yoplait filed a motion for summary judgment, arguing that (1) the quality

assurance procedures in its facility, including strainers, screens, and an x-ray machine, would have caught the metal flakes, given their size and number, if they derived from Yoplait, (2) expert testing confirmed the metal flakes were composed primarily of carbon and iron and "did not likely originate" from the Yoplait facility because Yoplait, in accordance with U. S. Food and Drug Administration regulations, does not use the type of metal comprising the flakes in its facility, and (3) the nature of Yoplait's manufacturing process makes it impossible for the metal flakes to have been deposited in only one yogurt container, and Yoplait has not had any other complaint of metal flakes in its yogurt.

In response, Matthews argued that, despite these contentions, the doctrine of res ipsa loquitur creates a genuine issue of material fact for the jury to decide the issue of negligence because there is no other explanation for the presence of the metal flakes in the sealed yogurt container other than Yoplait's negligence. Matthews noted that Yoplait's senior quality control manager at the facility where the subject yogurt was packaged admitted that "metal inclusion is a significant hazard in the manufacturing and processing of Yoplait yogurt[.]" In fact, according to the senior quality control manager, the control of metal inclusion is an important part of Yoplait's manufacturing and packaging operation, and the Yoplait facility checks for

it at least every four hours, and more often if there is a change or startup. The quality control manager testified that although she has "very rarely" seen metal in yogurt, it is "not unheard of[,]" and she recalled that metal dusting from pieces of a gasket had previously contaminated yogurt, but was discovered before leaving the plant. She agreed that metal inclusion in yogurt due to equipment with metal parts would be unlikely, but could occur.

In addition, Matthews submitted a Yoplait report for the date the yogurt at issue was packaged indicating that cups tipped over and the production line subsequently was repaired prior to the subject yogurt being sealed. However, Yoplait noted that despite a jam for a tipped yogurt cup during production of Matthews's product, the manufacturing records for that date indicated the x-ray machine passed all checks, and no foreign material was detected.

Matthews further noted that although Yoplait uses multiple screens and strainers to remove foreign objects from the yogurt during the manufacturing process, these screens and strainers are used before fruit is added to the yogurt. The only check for foreign substances after the addition of fruit is the x-ray machine through which the sealed yogurt containers pass. However, while Yoplait's senior quality control manager testified that she believed Yoplait's x-ray machine would have detected the

4

size and quantity of the metal fragments swallowed by Matthews, the x-ray machine would have been calibrated not to detect "particulates" of the same "differential" or "density" as strawberries. The senior quality control manager could not definitively state that the density of the metal flakes was different from the strawberry density because she had not examined the metal fragments; she believed it was "highly unlikely[,]" but "[n]ot impossible[,]" that the x-ray machine would not have alerted to the metal flakes.

Following oral argument and a review of the parties' briefs and the complete record, the State Court of Clayton County found that

> based on the evidence in the record of the case at this time, the doctrine of *res ipsa loquitur* does apply. There is an inference that the metal flakes were inserted into the yogurt container prior to the container being sealed, as it was sealed when it left the manufacturer, and sealed before opened by [Matthews] to consume.

(Emphasis in original.) Nonetheless, the trial court further found that "[Yoplait's] evidence of the manufacturing process, however, does overcome that inference[.]" The court then detailed evidence demonstrating that the metal flakes likely were not the result of Yoplait's manufacturing or packaging process and granted summary judgment to Yoplait. This appeal followed.

5

In two related enumerations of error, Matthews first contends that the trial court erred in granting Yoplait's motion for summary judgment after it determined res ipsa loquitur applied. Matthews further argues that, even if res ipsa loquitur did not apply, genuine issues of material fact precluded judgment in Yoplait's favor. For the following reasons, we conclude that the trial court misapplied the doctrine of res ipsa loquitur.

As this Court has recently reiterated, "res ipsa loquitur is a legal maxim that means the transaction or thing speaks for itself." (Citation and punctuation omitted.) *Family Thrift, Inc. v. Birthrong*, 336 Ga. App. 601, 604 (2) (785 SE2d 547) (2016). It is "an evidentiary based rule which provides for an inference of negligence to arise from the occurrence of an injury-causing incident[.]" *Ken Thomas of Ga., Inc. v. Halim*, 266 Ga. App. 570, 573 (597 SE2d 615) (2004). This rule of evidence is "applied in cases where there is no evidence of consequence showing negligence on the part of the defendant. The doctrine authorizes, but does not require, the jury to infer facts from the circumstances in which the injury occurred, thereby filling the evidentiary gap[.]" *Aderhold v. Lowe's Home Centers*, 284 Ga. App. 294, 295 (643 SE2d 811) (2007); see also *Family Thrift*, 336 Ga. App. at 604-605 (2). In other words,

> [t]he principal basis for application of the rule is that the occurrence involved would not have occurred but for negligence, and this negligence may properly be charged to the person in exclusive control of the instrumentality.

(Citation and punctuation omitted.) *Persinger v. Step By Step Infant Dev. Center*, 253 Ga. App. 768, 770 (560 SE2d 333) (2002). "[T]he doctrine of res ipsa loquitur does not require elimination of all other possible occurrences; it must only render less probable all inconsistent conclusions." (Citation and punctuation omitted.) Id. at 772.

The elements of the doctrine of res ipsa loquitur are well-settled: (1) an injury which ordinarily does not occur in the absence of someone's negligence; (2) the injury must be caused by an agency or instrumentality within the defendant's exclusive control; and (3) the injury was not caused by any voluntary action or contribution on the part of the plaintiff. See *Halim*, 266 Ga. App. at 573. "Unless the plaintiff can show these elements, he or she is not entitled to present the issue to the jury." *Persinger*, 253 Ga. App. at 770. Compare, e.g., *Parker v. Dailey*, 226 Ga. 643, 645 (1) (177 SE2d 44) (1970) (finding doctrine of res ipsa loquitur not applicable where tire fell on child).

> If the evidence includes an incomplete explanation of the facts of the occurrence to the extent that the true cause is still left in doubt or is not clearly shown, the doctrine of res ipsa loquitur remains in the case, leaving to the jury a permissible inference of negligence for them to

7

accept or reject. . . . On the other hand, if the cause of the accident is fully explained, the doctrine does not apply. . . . It also does not apply if the evidence shows that the injury could just as reasonably been caused by something other than the defendants negligence.

(Citations and punctuation omitted.) *Doyle v. RST Constr. Specialty*, 286 Ga. App. 53, 58 (1) (648 SE2d 664) (2007); but see *Atlanta Coca-Cola Bottling Co. v. Ergle*, 128 Ga. App. 381, 384 (2) (b) (196 SE2d 670) (1973) ("The evidence need not utterly negate the possibility of involvement by third persons or extraneous causes as is contended by the defendant.").

"Res ipsa loquitur should be applied with caution and only in extreme cases, and is not applicable when there is an intermediary cause which could have produced the injury." (Citations and punctuation omitted.) *Sheats v. Kroger Co.*, 336 Ga. App. 307, 312 (4) (784 SE2d 442) (2016). Moreover, res ipsa loquitur is not applicable "where there is direct unambiguous testimony as to the absence of negligence by the defendant, or where there is no fair inference that the defendant was negligent." *Hosp. Auth. of St. Marys v. Eason,* 222 Ga. 536, 541 (150 SE2d 812) (1966).

In this case, the trial court found that the doctrine of res ipsa loquitur applies, but instead of allowing the case to go to a jury, the court granted summary judgment

8

to Yoplait, finding Yoplait overcame the inference of negligence inherent in the doctrine of res ipsa loquitur. This is an improper application of the doctrine.

Res ipsa loquitur "allow[s] the jury to decide the case and to make or reject the inference authorized as it sees fit — it does not create a presumption to that effect for the defendant to overcome." (Citation and emphasis omitted.) *McCurley v. Ludwig*, 215 Ga. App. 798, 800 (2) (452 SE2d 554) (1994); see also *Persinger*, 253 Ga. App. at 771. If a trial court determines that res ipsa loquitur applies, "the case may proceed to the jury[,]" and "[t]he sufficiency of the circumstantial evidence, and its consistency or inconsistency with alternative hypotheses, is a question for the jury." (Citation omitted.) *Persinger*, 253 Ga. App. at 771; see also *Dawson v. American Heritage Life Ins. Co.*, 121 Ga. App. 266, 269 (173 SE2d 424) (1970) (finding that "trial court should have allowed the jury to make a determination of whether the defendant's negligence, if any, was the proximate cause of plaintiff's injuries under a charge including the principle of res ipsa loquitur"); *Sinkovitz v. Peters Land Co.*, 5 Ga. App. 788, 793 (64 SE 93) (1909) (finding that plaintiff "had made a prima facie case [under res ipsa loquitur] which should have been submitted to a jury").[1]

---

[1] Cf. *Tuggle v. Helms*, 231 Ga. App. 899, 904 (499 SE2d 365) (1998) ("Res ipsa loquitur allows a jury to draw an inference of the negligence alleged and, if the requirements of the maxim are met, bars summary judgment for the defendant.")

As our Supreme Court has noted, the doctrine of res ipsa loquitur warrants an inference of negligence that affords a plaintiff "an opportunity to claim at the hands of the jury an inference drawn from facts which he may rely upon as proof of that which the law requires him to prove." *Palmer Brick Co. v. Chenall,* 119 Ga. 837, 844 (47 SE 329) (1904).

> As distinguished from a presumption of law, . . . which may be overcome by the introduction of evidence of the exercise of reasonable care and diligence on its part, requiring the plaintiff to produce evidence of the alleged negligence -- the inference which the jury may draw from proved facts of an unusual and extraordinary occurrence under the res ipsa loquitur rule is not overcome as a matter of law by evidence of due care. . . . It is the duty of the jury to make further inquiry as to whether this inference has been overcome by a satisfactory explanation. . . . It is for the jury to weigh this evidence along with all the other evidence and determine where the preponderance of the evidence lies.

(Citations omitted.) *Macon Coca-Cola Bottling Co. v. Chancey*, 216 Ga. 61, 69-70 (3) (114 SE2d 517) (1960). In short,

> [t]he maxim res ipsa loquitur is of limited application, but embodies a perfectly sound legal principle. It is frequently difficult to determine when it can be safely said that the thing speaks for itself. However, the process by which it is to be determined whether the physical facts and circumstances accompanying an injury are such that the act may be said itself to speak the negligence of the defendant is to be worked out by the

(McMurray, P. J., dissenting); Id. at 906 ("Where the facts would permit a jury to infer the existence of evidence under res ipsa loquitur, it is error to grant a motion for summary judgment.") (Eldridge, J., dissenting).

10

jury and not by the court. Not only is negligence or diligence, in every case where either is involved, a question solely for the jury, but it is also the prerogative of the jury to say in the first instance whether the evidence adduced to raise the inference of fact -- that an extraordinary and unexplained casualty authorizes an inference that the defendant was negligent, is sufficient or insufficient for the purpose.

(Citation omitted.) *Dawson*, 121 Ga. App. at 269.

Having found that res ipsa loquitur applies in this case, "[t]he trial court should have allowed the jury to make a determination of whether the defendant's negligence, if any, was the proximate cause of [Matthews's] injuries under a charge including the principle of res ipsa loquitur." *Dawson*, 121 Ga. App. at 269. Therefore, it appears from the trial court's order that the court misapplied the doctrine of res ipsa loquitur by improperly substituting its judgment in place of the jury's on the issue of whether Yoplait overcame the inference of negligence supplied by res ipsa loquitur. Accordingly, the trial court's order granting Yoplait's motion for summary judgment must be reversed.

This result is not altered by Yoplait's current argument that we may affirm the trial court's judgment pursuant to our de novo review because evidence in support of the "exclusive control" element of res ipsa loquitur is lacking. Of note, Yoplait did not raise this argument as a basis for summary judgment. See *Locke's Graphic &*

*Vinyl Signs v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007) ("An argument not raised in the trial court is waived and cannot be raised for the first time on appeal."). Moreover, we express no opinion on the trial court's initial finding that res ipsa loquitur applies because that issue is not properly before this Court. "To secure appellate review of the superior court's adverse rulings on . . . other alleged violations …, [the defendant] was required to file either a cross-appeal to the [main] appeal or a separate notice of appeal." *State v. Nickerson*, 324 Ga. App. 576, 581 (2) (749 SE2d 768) (2013); see also OCGA § 5-6-38 (a); compare *Dunn v. Five Star Dodge-Jeep-Eagle-Mazda*, 245 Ga. App. 378, 379 (537 SE2d 782) (2000) (holding that, on remand following reversal, trial court could reconsider defendant's arguments initially raised in the trial court). This, Yoplait failed to do.

In sum, we conclude that the trial court misapplied the doctrine of res ipsa loquitur. In addition, Yoplait failed to challenge, by cross-appeal or by a separate notice of appeal, the trial court's initial conclusion that res ipsa loquitur applies in this case. Therefore, we reverse the trial court's judgment granting Yoplait's motion for summary judgment and remand this case to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and case remanded with direction. Dillard, P. J., and Gobeil, J., concur.*